1

2

3

4

5        IN THE UNITED STATES DISTRICT COURT

6        FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    RICHARD BURDEN TEED,                    Case No.  22-cv-02862-CRB

9                Plaintiff,
                                            **ORDER GRANTING IN PART AND**
10        v.                                 **DENYING IN PART MOTION TO**
                                            **DISMISS**
11   JAMES "JIMMY" CHEN, et al.,

12               Defendants.

13

14        Plaintiff Richard Burden Teed ("Teed") brings contract, fraud, tort, and federal

15   statutory claims against Defendants, James "Jimmy" Chen and Chen Trading

16   Management, LLC ("Chen"), for allegedly mismanaging Teed's Bitcoin.  Compl. (dkt. 1).

17   Teed alleges, inter alia, that Chen fraudulently induced Teed's Bitcoin investment and

18   failed to uphold promises to repay that investment.  Id.

19        Chen moves to dismiss Teed's Complaint for failure to state a claim under Federal

20   Rule of Civil Procedure 12(b)(6).  Mot. (dkt. 11).  Teed opposed the motion.  Opp'n (dkt.

21   18).  Chen replied.[1]  Reply (dkt. 23).  Finding this case suitable for resolution without oral

22   argument under Civil Local Rule 7-1(b), the Court GRANTS Chen's motion as to fraud

23   (claims 3 and 4) and Teed's claims under the Commodity Exchange Act (claim 9) and

24   Securities Act of 1933 ("Securities Act") (claim 10), with leave to amend; GRANTS

25

26   _____

27   [1]  Chen attached a supplemental Request for Judicial Notice of the California Rules of
     Professional Conduct to his reply.  RJN (dkt. 23-1).  Chen asks the Court to take judicial notice of
     California Rules of Professional Conduct 1.1, 1.16(b), 1.2.1, 1.4, 2.1, and 8.49(c).  Id. at 2.  But
28   Chen fails to explain why the Court must resolve the request in order to rule on his motion.  See
     id.  For this reason, the Court declines to rule on Chen's request for judicial notice.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Chen's motion as to claim and delivery (claim 6), without leave to amend; and DENIES

2    Chen's motion as to breach of contract (claims 1 and 2) and conversion (claim 5).

3    **I.      BACKGROUND**

4          Teed alleges the following:

5          In or around September 2019, Chen convinced Teed to invest money and Bitcoin

6    with Chen's opportunity fund, the Silverstream Opportunity Fund, LLC.  Compl. ¶ 29.

7    Chen purported to be skilled in cryptocurrency management and trading, representing that

8    he was earning 400% returns on his Bitcoin investments by using a "magic box" algorithm

9    that could time cryptocurrency transactions to maximize returns on investment.  Id. ¶¶ 10,

10   30–31.  Chen also sent Teed screenshots showing investment returns of 28% for April

11   2019 and 41% for the preceding seven months.  Id. ¶ 32.  Moreover, Chen emphasized his

12   impending partnership with Bill Barhydt, a well-known expert of the Internet and mobile

13   technologies industry.  Id. ¶ 33.

14         Trusting in Chen's apparent expertise, Teed liquidated 90 Bitcoins and transferred

15   the funds to Chen for investing and trading on Teed's behalf.  Id. ¶ 37.  Teed then

16   entrusted an additional $250,000 (which was worth about 45 Bitcoins) to Chen for the

17   same purpose.  Id. ¶ 42.

18         After receiving Teed's funds, however, Chen did not purchase any Bitcoin for

19   weeks.  Id. ¶ 43.  During this time, the purchase price of Bitcoin rose from around $4,000

20   per Bitcoin to over $7,500 per Bitcoin.  Id. ¶ 44.  Eventually, Chen purchased an

21   unspecified amount of Bitcoin with Teed's money at the price of $7,500 per Bitcoin.  Id.

22   ¶ 45.

23         Dissatisfied with the timing and price of Chen's Bitcoin purchase, Teed demanded

24   the return of his money.  Id. ¶ 46.  But Chen did not repay Teed.  Id.  Instead, Chen offered

25   to place Teed's funds into arbitrage to "maintain safe trades and get back the lost Bitcoin."

26   Id. ¶ 47.

27         At this point, Teed still believed that Chen was acting in good faith and with the

28   intent to repay him.  Id. ¶ 48.  Accordingly, Teed and Chen entered into two agreements to

facilitate Chen's repayment of Teed's investments.

### A.     March 2021 Investment Management Agreement

On March 3, 2021, Teed and Chen entered into an Investment Management Agreement ("Investment Agreement").  Id. ¶ 51; id. Ex. D (dkt. 1-4).  The Investment Agreement authorized Chen to establish a "separate wallet" account (the "Account") for the custody and management of Teed's Bitcoin.  Id. ¶ 52; id. Ex. D at 2.

Teed authorized the deposit of 94 Bitcoins into the Account.  Id. ¶ 53; id. Ex. D at 1.  The Investment Agreement authorized Teed to "withdraw all or any portion of the assets in the Account upon one (1) business day prior written notice to [Chen Trading Management, LLC], and the amount so withdrawn shall be immediately distributed to [Teed] by [Chen Trading Management, LLC] to the wallet set forth in such written notice." Id. ¶ 54; id. Ex. D at 1.  All of Teed's Bitcoin would remain in the Account and would not be "distributed, exchanged, sold or otherwise transferred or assigned, in whole or in part, to any other wallet or account, except in connection with a termination of [the] Agreement . . . or with prior written consent of [Teed]."  Id. ¶ 55; id. Ex. D at 2–3.  Finally, the Agreement would terminate on June 15, 2021, and entitled Teed to receive at least 106 Bitcoins from Chen by that time.  Id. ¶¶ 56–57; id. Ex. D at 5.

On June 15, 2021, the Investment Agreement expired.  Chen had not paid any Bitcoins to Teed.  Id. ¶ 58.

On June 18, 2021, Chen emailed Teed acknowledging that Chen was "in default" and "had every intention to pay back the 106 btc that [wa]s in default alongside any penalties that w[ould] be mutually discussed later on."  Id. ¶ 59; see id. Ex. A (dkt. 1-1) at 3.  On June 19, 2021, Chen emailed Teed again, saying that Chen was "willing to do whatever it takes to make you whole, and [would] be working 24/7 . . . to make sure it happen[ed]."  Id. ¶ 60; see id. Ex. B (dkt. 1-2) at 3.

Teed asserts that Chen did not take any steps to "make [him] whole."[2]  Id. ¶ 62.

---

[2]  Teed emphasizes that Chen's "displays of extravagance"—living in a lavish house in the Bay Area, driving a Rolls Royce—are incompatible with his representations of an inability to pay Teed

3

Instead, Chen claimed that he sent Teed's Bitcoin overseas to a Chinese citizen named "Max," who was refusing to return the Bitcoin. <u>Id.</u> ¶ 64.  Chen provided Teed with screenshots of this alleged transfer.  <u>Id.</u> ¶ 65.

### B.    September 2021 Settlement Agreement

Then, on September 7, 2021, Teed and Chen entered into a Settlement and Release Agreement ("Settlement Agreement"), which established a schedule for Chen's repayment of Teed's Bitcoin.  <u>Id.</u> ¶¶ 67–69; <u>id.</u> Ex. C (dkt. 1-3).  The Settlement Agreement also set contingencies for late payments and non-payment.  <u>Id.</u> ¶ 70; <u>id.</u> Ex. C at 4.

Chen did not make any payments under the payment plan.  <u>Id.</u> ¶ 71.  As of April 2022, Chen owed Teed a total of 136.5 Bitcoins, the value of which now exceeds $5.1 million.  <u>Id.</u> ¶¶ 72, 121.  Under the terms of the Settlement Agreement, the amount owed continually increases with every payment milestone that Chen misses.[3]  <u>Id.</u>

### C.    Teed's Allegations

Teed brings eleven causes of action against Chen: (1) breach of the March 2021 Investment Agreement, <u>id.</u> ¶¶ 81–89; (2) breach of the September 2021 Settlement Agreement, <u>id.</u> ¶¶ 90–96; (3) fraudulent inducement to invest money and Bitcoin, <u>id.</u> ¶¶ 97–106.; (4) fraudulent inducement to enter into the Investment and Settlement Agreements, <u>id.</u> ¶¶ 107–19; (5) conversion, <u>id.</u> ¶¶ 120–25; (6) claim and delivery, <u>id.</u> ¶¶ 126–30; (7) breach of fiduciary duty, <u>id.</u> ¶¶ 131–37; (8) violation of 17 C.F.R. § 1.20(a), <u>id.</u> ¶¶ 138–41; (9) violation of Section 6(c)(1) of the Commodity Exchange Act, 7 U.S.C. § 9(1), and Regulation 180.1, 17 C.F.R. § 180.1(a), <u>id.</u> ¶¶ 142–49; (10) violation of Sections 5 and 12(a)(1) of the Securities Act, <u>id.</u> ¶¶ 150–55; and (11) negligence, <u>id.</u> ¶¶ 156–63.

Because Chen's motion does not challenge Teed's claims for breach of fiduciary

---

back.  Compl. ¶¶ 75–79.

[3]  The Settlement Agreement sets the following requirement: "[I]f, for any reason, timely payment in full as outlined above . . . does not occur, the entirety of the balance 121.6 Bitcoin less any Bitcoin payment timely made shall be immediately due and owing by Chen to Teed without further notice.  In addition, Chen agrees to pay to Teed one (1) additional Bitcoin <u>each month</u> for every month remaining that Chen owes ay payment obligation."  Compl. Ex. C at 4.

United States District Court
Northern District of California

duty, violation of 17 C.F.R. § 1.20(a), and negligence (claims 7, 8, and 11, respectively), the Court does not consider those claims.

## II.    LEGAL STANDARD

A complaint may be dismissed for failure to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) applies when a complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" under such a theory. Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019). Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a 12(b)(6) motion. Id. (citing Twombly, 550 U.S. at 555). When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986); Clegg v. Cult Awareness Network, 18 F.3d 752, 754–55 (9th Cir. 1994).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). But leave to amend "is not to be granted automatically." In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 738 (9th Cir. 2013). A court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (citing Foman v. Davis, 371 U.S.

1  178, 182 (1962)).  To determine whether amendment would be futile, courts examine

2  whether the complaint can be amended to cure the defect requiring dismissal "without

3  contradicting any of the allegations of [the] original complaint."  <u>Reddy v. Litton Indus.,</u>

4  <u>Inc.</u>, 912 F.2d 291, 296–97 (9th Cir. 1990).

5  **III.  DISCUSSION**

6      The Court addresses Chen's motion in the following order: (1) breach of contract

7  (claims 1 and 2); (2) fraud (claims 3 and 4); (3) torts (claims 5 and 6); (4) the Commodity

8  Exchange Act and 17 C.F.R. § 180.1 (claim 9);[4] and (5) the Securities Act (claim 10).

9      **A.  Breach of Contract (Claims 1 and 2)**

10      Teed alleges that Chen breached two contracts: the March 2021 Investment

11  Agreement and the September 2021 Settlement Agreement.  Compl. ¶¶ 81–96.  To state a

12  breach of contract claim, a plaintiff must allege (1) the existence of a contract, (2)

13  plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4)

14  resulting damages to the plaintiff.  <u>Oasis W. Realty, LLC v. Goldman</u>, 51 Cal. 4th 811, 821

15  (2011).  Chen argues that Teed fails to state a claim because (1) the Investment Agreement

16  is unexecuted and (2) the Settlement Agreement lacks consideration, has unlawful

17  penalties, involves an uncertain timeframe, and is unconscionable.  Mot. at 11, 18.  Finding

18  these arguments unpersuasive, the Court DENIES Chen's motion to dismiss Teed's breach

19  of contract claims.

20      **1.  Breach of the March 2021 Investment Agreement (Claim 1)**

21      Chen argues that Teed's first cause of action fails to state a claim for breach of

22  contract because Teed did not execute the Investment Agreement.  <u>Id.</u> at 18.  Chen further

23  argues that the contract was unexecuted because the Investment Agreement attached to the

24  Complaint "is described as a draft."  Reply at 10.

25      Because Chen's sole contention is that the Investment Agreement is unexecuted,

26

27  _____

[4]  Both parties misnumber this cause of action in their briefing.  <u>See</u> Mot. at 23; Opp'n at 25.  The Court follows the Complaint's numbering: Teed's <u>ninth</u> cause of action cites Section 6(c)(1) of the

28  Commodity Exchange Act, 7 U.S.C. § 9(1), and Regulation 180.1, 17 C.F.R. § 180.1, and contends that Bitcoin are "swaps" within the meaning of those provisions.  Compl. ¶¶ 142–49.

*United States District Court*
*Northern District of California*

only the sufficiency of Teed's allegations for the first element of a breach of contract claim—the existence of a contract between the parties—is in dispute. "Contract formation requires mutual consent, which cannot exist unless the parties 'agree upon the same thing in the same sense.'" Bustamante v. Intuit, Inc., 141 Cal. App. 4th 199, 208 (2006) (quoting Cal. Civ. Code §§ 1580, 1550, 1565). Mutual assent is typically demonstrated by an offer and acceptance communicated to the offeror. Donovan v. RRL Corp., 26 Cal. 4th 261, 270–71 (2001). "The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe. Accordingly, the primary focus in determining the existence of mutual consent is upon the acts of the parties involved." Meyer v. Benko, 55 Cal. App. 3d 937, 942–43 (1976).

The question of "[w]hether the parties intended only to be bound upon the execution of a written, signed agreement is a factual issue." Callie v. Near, 829 F.2d 888, 890–91 (9th Cir. 1987). The fact that a party did not sign a contract does not necessarily defeat a plaintiff's breach of contract claim at the motion to dismiss stage. See Angell v. Rowlands, 85 Cal. App. 3d 536, 542 (1978) (establishing that "a contract is invalid if not signed by all parties . . . [o]nly when it is shown, either by parol or express condition, that the contract was not intended to be complete until all parties had signed"); Performance Plastering v. Richmond Am. Homes of Cal., Inc., 153 Cal. App. 4th 659, 668 (2007) ("[T]he lack of a party's signature does not make a fully executed contract unenforceable.").

Here, Chen does not cite any provision in the Investment Agreement that requires the agreement to be signed by both parties in order to convey mutual assent. See Mot. at 18–19. Accordingly, the fact that Teed did not sign the Investment Agreement does not, in itself, defeat his breach of contract claim at the pleading stage. Cf. Mewawalla v. Middleman, No. 21-cv-09700-EMC, 2022 WL 1204474, at *18–19 (N.D. Cal. May 2, 2022) (holding that the absence of a party's signature in an employment contract did not preclude the existence of a contract at the motion to dismiss stage). Moreover, the fact that

United States District Court
Northern District of California

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the Investment Agreement is labeled as a draft does not defeat Teed's claim because the parties' exchange of a draft agreement is sufficient to allege a contract at this stage.  Cf. Bus. Integration Tech. v. MuleSoft Inc., No. 11-cv-04782-EDL, 2021 WL 13041534, at *3 (N.D. Cal. Mar. 23, 2012) (concluding that the plaintiff sufficiently alleged the existence of a contract at the motion to dismiss stage based on allegations that the parties exchanged a draft agreement).

Thus, the Court DENIES Chen's motion to dismiss Teed's first cause of action.

### 2.      Breach of the September 2021 Settlement Agreement (Claim 2)

Chen then argues that Teed's second cause of action, breach of the Settlement Agreement, fails to state a claim because the Settlement Agreement lacks consideration, has unlawful penalties, involves an uncertain timeframe, and is unconscionable.  Mot. at 11, 18.  In making these arguments, Chen quotes extensively from his declaration in support of the motion, which the Court cannot consider on a motion to dismiss.[5]  Mot. at 16–18; Declaration of James "Jimmy" Chen (dkt. 11-1).  In the alternative, Chen proposes that, should the Court decline to dismiss Teed's second claim, the Court should exercise its discretion to convert the current motion into a motion for summary judgment under Federal Rule of Civil Procedure 56.  Fed. R. Civ. P. 12(d); Reply at 15–16.  But because this argument was raised for the first time in Chen's reply, it is waived.  See Ass'n of Irritated Residents v. C & R Vanderham Dairy, 435 F. Supp. 2d 1078, 1089 (E.D. Cal. 2006) ("It is inappropriate to consider arguments raised for the first time in a reply brief."); see also United States v. Romm, 455 F.3d 990, 997 (9th Cir. 2006) (declining to consider an issue first raised on reply because "arguments not raised by a party in its opening brief are deemed waived") (quoting Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999)).

The Court finds each of Chen's arguments unpersuasive, and DENIES his motion to

---

[5]  Generally, district courts "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  There are two exceptions to that general rule: a court may consider (1) material that is incorporated into the complaint and (2) judicially noticeable material.  Lee v. City of Los Angeles, 250 F.3d 668, 689–90 (9th Cir. 2001).  Chen's declaration does not fall under either exception.  Thus, the Court declines to consider Chen's declaration in ruling on his motion.

United States District Court
Northern District of California

dismiss the second breach of contract claim.

### a.    Uncertain Timeframe and Unconscionability

Chen's arguments concerning the Settlement Agreement's uncertain timeframe and unconscionability do not warrant dismissal of Teed's second cause of action.

The timeframe under the Settlement Agreement is not uncertain because the agreement sets forth a clear, precise payment schedule.  Compl. Ex. C at 4.  Moreover, Chen's unconscionability argument is unavailing at this stage because the question of whether a contract is unconscionable exceeds the scope of a 12(b)(6) motion.  See Cazares v. Pac. Shore Funding, No. 04-cv-2548-DSF(SSX), 2006 WL 149106, at *6 n.4 (C.D. Cal. Jan. 3, 2006) ("A determination of whether a contract is unconscionable requires a consideration of facts that are beyond the scope of a motion to dismiss.").

### b.    Consideration

In California, a settlement agreement "may be enforced if two requirements are met: (1) both parties must have agreed to the terms of the settlement . . . and (2) it must be a complete agreement." Page v. Horel, No. 09-cv-0289-EMC (PR), 2011 WL 5117562, at *4 (N.D. Cal. Oct. 28, 2011).  The Ninth Circuit has held that, under California law, "[t]he relinquishment of a colorable legal claim" constitutes sufficient consideration.  Murphy v. T. Rowe Price Prime Rsrv. Fund, Inc., 8 F.3d 1420, 1423 (9th Cir.1993).  The Court rejects Chen's argument that the Settlement Agreement lacked sufficient consideration because it expressly includes a mutual release of legal claims.  Compl. Ex. C at 3–4.  Thus, Teed has plausibly alleged consideration.

### c.    Unlawful Penalties

Chen identifies two provisions in the Settlement Agreement that he argues constitute unlawful penalties. Mot. at 11–12.  First, Chen identifies the payment schedule in section 1 of the Settlement Agreement:

> (a) four (4) Bitcoin each month on the last day of the month starting September 30, 2021 and continuing each month until December 31, 2021 (16 Bitcoin);
> (b) five (5) Bitcoin each month on the last day of the month starting January 31, 2022 and continuing each month until

March 31, 2022 (15 Bitcoin);

(c) six (6) Bitcoin each month on the last day of the month starting April 30, 2022 and continuing each month until June 30, 2022 (18 Bitcoin);

(d) seven (7) Bitcoin each month on the last day of the month starting July 31, 2022 and continuing each month until September 30, 2022 (21 Bitcoin); and

(e) fifty-one and six-tenths (51.6) Bitcoin on October 31, 2022.

Id.; Compl. Ex. C. at 3.  Second, Chen highlights the clause titled "Penalties for Late or Non-Payment" (section 3 of the Settlement Agreement):

> Time is of the essence related to timely payment of the Bitcoin. As such, if, for any reason, timely payment in full as outlined above . . . does not occur, the entirety of the balance 121.6 bitcoin less any Bitcoin payment timely made shall be immediately due and owing by Chen to Teed without further notice.  In addition, Chen agrees to pay to Teed one (1) additional Bitcoin **each month** for every month remaining that Chen owes ay payment obligation.  To wit, if Chen fails to make timely payment of the seven (7) Bitcoin due on September 30, 2022, Chen owes to Teed sixty and six-tenths (60.6) Bitcoin (7 Bitcoin for September 30, 2022 payment + 51.6 Bitcoin for October 31, 2022 payment + 2 Bitcoin for 2 months of payments remaining).

Mot. at 12; Compl. Ex. C at 4.

California Civil Code section 1671(b) provides that "a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made."  Cal. Civ. Code § 1671(b).  "The question of whether a provision is an enforceable liquidated damages provision or an unenforceable penalty is a question of law to be decided by the Court."  Dollar Tree Stores Inc. v. Toyama Partners LLC, 875 F. Supp. 2d 1058, 1071 (N.D. Cal. 2012) (citing Harbor Island Holdings v. Kim, 107 Cal. App. 4th 790, 794 (2003)).  In making that determination, courts focus on the substance of the agreement rather than its form.  Garrett v. Coast & S. Fed. Sav. & Loan Ass'n, 9 Cal. 3d 731, 739 (1973).  A liquidated damages clause becomes an unenforceable penalty only "if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach."  Ridgley v. Topa Thrift & Loan Ass'n, 17 Cal. 4th 970, 976–78 (1998).  The amount set as

10

United States District Court
Northern District of California

1    liquidated damages "must represent the result of a reasonable endeavor by the parties to

2    estimate a fair average compensation for any loss that may be sustained." Id. (quoting

3    Garrett, 9 Cal. 3d at 739).

4         Chen contends that "there is no relationship between the penalty assessed and the

5    loss to [Teed]," and that sections 1 and 3 "bear no rational relationship of damages that

6    Teed suffered but are expressly designed to be punitive in nature" because "the Bitcoin is

7    increased by 1 irrespective of value for each month, starting 4 going to 7, jumping to 21 in

8    September of 2022, and 51.6 in October of 2022." Mot. at 13. However, Chen's

9    observation that the Bitcoin payment installments gradually increase is an inadequate basis

10   for dismissal because that increase alone does not establish an unlawful penalty. Cf.

11   Biancalana v. Fleming, 45 Cal. App. 4th 698, 702–03 (1996) (rejecting the argument that a

12   prepayment clause is unenforceable when the debt is accelerated by the obligee because of

13   a default, instead of voluntarily prepaid by the obligor).

14        However, even if the Court found that sections 1 and 3 of the Settlement Agreement

15   were unlawful penalties, those provisions would be severable and would not affect the

16   agreement's enforceability. See Greentree Fin. Grp., Inc. v. Execute Sports, Inc., 163 Cal.

17   App. 4th 495, 502 (2008) ("Civil Code section 1671 addresses the validity of a liquidated

18   damages provision, rather than the validity of a contract containing such a provision . . . .")

19   (emphasis added). Therefore, even if the Court agreed with Chen's argument concerning

20   sections 1 and 3, dismissal would not be warranted.

21        Because Chen's arguments concerning the Settlement Agreement do not warrant

22   dismissal and Teed has alleged sufficient facts for every element of a breach of contract

23   claim, the Court DENIES Chen's motion to dismiss Teed's second cause of action.

24        **B.    Fraud (Claims 3 and 4)**

25        Teed alleges that Chen is liable for fraud in two ways: (1) for using false

26   representations to induce Teed into investing money and Bitcoin with Chen (claim 3) and

27   (2) for using false representations to induce him into signing the Investment and

28   Settlement Agreements (claim 4). Compl. ¶¶ 97–119.

United States District Court
Northern District of California

Federal Rule of Civil Procedure 9(b) requires a party "alleging fraud or mistake [to] state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  When a complaint or a claim within a complaint is grounded in fraud, and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a court may dismiss the complaint or claim on a Rule 12(b)(6) motion.  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003).  Rule 9(b) requires "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'"  Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)).  This means that fraud claims "must be accompanied by the 'who, what, when, where, and how' of the misconduct alleged."  Vess, 317 F.3d at 1106.

Under California law, the elements of fraud are (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or "scienter"); (3) intent to defraud (i.e., intent to induce reliance); (4) justifiable reliance; and (5) resulting damage.  Golden Gate Way, LLC v. Enercon Servs., Inc., 572 F. Supp. 3d 797, 821 (N.D. Cal. 2021) (quoting Lazar v. Superior Ct., 12 Cal. 4th 631, 638 (1996)).

Chen argues (1) that the Settlement and Investment Agreements are invalid and thus cannot give rise to fraud claims, and (2) that Teed fails to allege his fraud claims with sufficient particularity under Rule 9(b).  Mot. at 19–21; Reply at 11–12.  Finding these arguments unpersuasive, the Court GRANTS Chen's motion to dismiss Teed's fraud claims.

### 1.    Fraudulent Inducement to Invest Money and Bitcoin (Claim 3)

Chen advances two arguments concerning Teed's first fraud claim.  First, Chen argues that, if the Settlement Agreement is invalid, it cannot be the basis of a fraud action.[6] Mot. at 19.  Second, Chen argues that Teed's claim consists of "no well pleaded facts as

---

[6] Because the Court does not find that the Settlement Agreement is invalid, see supra Section III(A)(2)(c), the Court need not address this argument.

articulated . . . other than those which are conclusory and stated upon information and belief," and thus fails to allege fraud with 9(b) particularity.  Id. at 19–20; Reply at 11.

Teed responds that the Complaint alleges facts for every element of fraud with sufficient particularity under Rule 9(b).  Opp'n at 19.  As to the first element of fraud (misrepresentation), Teed alleges that, in September 2019, Chen made a series of intentional misrepresentations to establish his expertise in wealth management: Chen claimed that he was generating 400% returns on his Bitcoin investments, that his "magic box" algorithm could time cryptocurrency transactions to generate monthly returns between 28% and 41%, and that he had an impending partnership with Bill Barhydt, a well-known expert of Internet and mobile technologies.  Id.; Compl. ¶¶ 99–101.  As to the second element (knowledge of falsity), Teed generally alleges that Chen knew that those representations were false.  Opp'n at 19; Compl. ¶¶ 102–03; see Fed. R. Civ. P. 9(b) (providing that "intent, knowledge, and other conditions of a person's mind may be alleged generally").  As to the third element (intent to induce reliance), Teed alleges that Chen made the foregoing representations with intent to induce Teed to invest his money and Bitcoin with Chen.  Opp'n at 19; Compl. ¶¶ 102–03; see Fed. R. Civ. P. 9(b) (same).  As to the fourth element (justifiable reliance), Teed alleges that he relied on Chen's false representations and that such reliance was reasonable, considering Chen's claimed skills, connections, and success.  Opp'n at 19; Compl. ¶ 104.  As to the fifth element (resulting damage), Teed alleges that, "[a]s a proximate result of [Chen's] fraud, Teed has suffered an injury, in an amount to be proven at trial, including the loss of the Bitcoins Teed paid to Chen . . . ."  Compl. ¶ 105; see Opp'n at 19.

Although Teed alleges facts for each element of fraud, the Court finds that those factual allegations fail to meet 9(b) particularity because Teed omitted the context(s) in which Chen made the allegedly false or misleading statements, and the reasons that those statements were false.  To state a fraud claim, a plaintiff must allege facts concerning the time and place of the alleged fraudulent activity.  Swartz, 476 F.3d at 764; Vess, 317 F.3d at 1106; see also Glen Holly Ent., Inc. v. Tektronix, Inc., 100 F. Supp. 2d 1086, 1094

(C.D. Cal. 1999) (stating that "allegations such as '[d]uring the course of discussions in 1986 and 1987,' and 'in or about May through December 1987' do not make the grade under Rule 9(b)").  Moreover, to allege fraud with sufficient particularity under Rule 9(b), "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).  Here, Teed merely noted Chen's statements about his 400% returns on his Bitcoin investments, his "magic box" algorithm, and his impending partnership with Bill Barhydt, without explaining where Chen communicated those statements and why those statements were false when made.  See Compl. ¶¶ 99–101.  Moreover, Teed's allegation that Chen made those statements "[i]n and throughout September of 2019" are insufficiently particular to satisfy Rule 9(b).  See Glen Holly Ent., Inc., 100 F. Supp. 2d at 1094.

Accordingly, Teed has not sufficiently alleged the "who, what, when, where, and how" of his first fraud claim.  See Vess, 317 F.3d at 1106.  Thus, the Court GRANTS Chen's motion to dismiss Teed's third cause of action, with leave to amend so that Teed may allege facts concerning the circumstances of the alleged fraud, and why Chen's statements were false when made.

### 2.    Fraudulent Inducement to Enter into the Investment and Settlement Agreements (Claim 4)

Chen advances the same pair of arguments with respect to Teed's second fraud claim: that Teed's fourth cause of action fails because the Investment Agreement is unenforceable, and that Teed fails to allege fraud with 9(b) particularity.[7]  Mot. at 21; Reply at 12.

Again, Teed responds that the Complaint alleges facts for every element of fraud with particularity under Rule 9(b).[8]  As to the first element, Teed alleges the following

---

[7]  Because the Court finds that the Investment Agreement is enforceable, see supra Section III(A)(1), the Court need not address this argument.

[8]  The elements of fraud in inducement of a contract identical to the elements of actual fraud. Hidalgo v Ayurora Loan Servs., LLC, No. 13-cv-1341-H (JMA), 2013 WL 4647550, at *4 (S.D. Cal. Aug. 29, 2013) (citing Zinn v. Ex-Cell-O Corp., 148 Cal. App. 2d 56, 58 (Cal. Ct. App. 1957)).

United States District Court
Northern District of California

1   misrepresentations: promises and obligations to be performed by Chen in the Investment

2   Agreement; written representations from Chen to Teed that Chen would "do whatever it

3   takes to make [Teed] whole"; three plans that Chen claimed to be implementing to fulfill

4   that promise; and an express repayment plan in the Settlement Agreement.[9]  Opp'n at 20;

5   Compl. ¶¶ 59–61, 67, 111; id. Ex. B at 3–4.  As to the second element, Teed generally

6   alleges that Chen knew that his representations were false.  Opp'n at 21; Compl. ¶ 116; see

7   Fed. R. Civ. P. 9(b).  As to the third element, Teed generally alleges that Chen intended to

8   induce Teed to rely upon those representations.  Opp'n at 21; Compl. ¶ 115; see Fed. R.

9   Civ. P. 9(b).  As to the fourth element, Teed alleges that he relied on Chen's false

10  representations in entering into the Investment and Settlement Agreements, and that such

11  reliance was reasonable, considering Chen's written representations of intent to make Teed

12  whole through actionable plans.  Opp'n at 21; Compl. ¶¶ 59–61, 67, 111.  As to the fifth

13  element, Teed alleges that he was damaged because he "has been deprived of possession,

14  access and control over his Bitcoin."  Opp'n at 21; Compl. ¶¶ 118–19.

15      The Court finds that the factual allegations for Teed's fraudulent inducement claim

16  fail to meet Rule 9(b) because Teed omitted the reasons that Chen's statements were false.

17  Teed merely noted that Chen wrote in emails to Teed that Chen (1) intended to "do

18  whatever it takes to make [Teed] whole" and (2) was implementing three plans to fulfill

19  that promise, without explaining why those statements were false when made.  See Compl.

20  ¶¶ 60–61; id. Ex. B at 3–4; In re GlenFed, Inc. Sec. Litig., 42 F.3d at 1548 (requiring that

21  the complaint state "what is false or misleading about a statement, and why it is false").

22      Accordingly, Teed has not sufficiently alleged the "who, what, when, where, and

23  how" of his second fraud claim.  See Vess, 317 F.3d at 1106.  Thus, the Court GRANTS

24  Chen's motion to dismiss Teed's fourth cause of action with leave to amend so that Teed

25  may explain why Chen's statements were false when made.

26  _____

27  [9]  It is unclear why Teed characterizes the terms of the Investment and Settlement Agreements as
    misrepresentations from Chen.  In determining the sufficiency of Teed's factual allegations for his
28  second fraud claim, the Court assesses Chen's statements that he (1) would "do whatever it takes
    to make Teed whole" and (2) was implementing three plans to fulfill that promise to repay Teed.

United States District Court
Northern District of California

### C.   Tort Claims (Claims 5 and 6)

Teed brings two tort claims against Chen: conversion (claim 5) and claim and delivery (claim 6).  The Court DENIES Chen's motion to dismiss Teed's conversion claim, and GRANTS without leave to amend Chen's motion to dismiss Teed's claim and delivery claim.

#### 1.   Conversion (Claim 5)

Teed alleges that, as of the Complaint filing date (May 13, 2022), he owns 136.5 Bitcoin—the value of which exceeds $5.1 million—and that Chen wrongfully interfered with his interest in that property by failing to return it upon demand and/or by diverting it for Chen's exclusive use, without justification.  Compl. ¶¶ 121–22.

Chen makes four arguments in his motion.  First, Chen argues that Teed's conversion claim is conclusory and vague.  Mot. at 22.  Second, Chen argues that Teed cannot prove that Chen exercised unauthorized control over his Bitcoin.[10]  Id.  Third, Chen argues that Exhibits A and B violate the "rule of completeness" and that "[t]here is no reason for the redaction."[11]  Fourth, Chen reasserts that the Investment and Settlement Agreements are unconscionable.[12]  Because none of Chen's last three arguments provide a valid basis for dismissal at the pleading stage, the Court addresses only the first: that Teed's conversion claim is conclusory and vague.

Under California law, the elements of conversion are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.  Burlesci v. Petersen, 68 Cal. App. 4th 1062, 1066 (1998).  As to the first element, Teed alleges that he owned, and was entitled to immediately possess, 136.5 Bitcoins.  Opp'n at 122; Compl. ¶ 121.  As to the second element, Teed alleges that Chen converted his Bitcoin by (1) wrongfully commingling

---

[10]  This argument seems to assert that there is no genuine dispute of material fact as to the third element of conversion, but such an argument is not appropriate at the pleading stage.

[11]  This evidentiary argument is equally inappropriate at the motion to dismiss stage and thus also fails to provide a valid basis for dismissal.

[12]  As previously explained, see supra Section III(A)(2)(a), this argument is also inappropriate on a motion to dismiss.

Teed's Bitcoin with Chen's other accounts, despite an express agreement to keep Teed's Bitcoin separate; (2) failing to return Teed's Bitcoin upon demand; and (3) diverting the Bitcoin for Chen's exclusive use.  Opp'n at 22; Compl. ¶¶ 41, 46, 50, 71, 122.  As to the third element, as previously noted, Teed sufficiently alleges damages.  Opp'n at 23; Compl. ¶¶ 123–24.

These non-conclusory allegations are more than "[t]hreadbare recitals of the elements of a cause of action."  See Iqbal, 556 U.S. at 678.  Thus, the Court DENIES Chen's motion to dismiss Teed's conversion claim.

## 2.     Claim and Delivery (Claim 6)

Chen argues that the elements of claim and delivery "are almost identical to those of conversion," and that claim and delivery is an alternative remedy to conversion.  Mot. at 22–23.  Thus, "[t]o the extent that the cause of action for conversion fails, so does the claim for claim and delivery."  Id. at 23.  Teed responds that the Complaint has sufficiently stated a claim for claim and delivery, restating his allegations in the Complaint.  Opp'n at 24; Compl. ¶¶ 127–30.

Claim and delivery is "a provisional remedy which affords the plaintiff the right of immediate possession of the property involved in the action for specific recovery of the property without waiting for trial and judgment."  Am. Mach. & Foundry Co. v. Pitchess, 262 Cal. App. 2d 490, 493 (1968).  "A plaintiff entitled to the possession of personal property held by another may bring an action for specific recovery of the property. And, if immediate possession is important, he may invoke the provisional remedy of claim and delivery to obtain such possession without waiting for trial and judgment."  McFaddin v. H.S. Crocker Co., Inc., 219 Cal. App. 2d 585, 590 (1963) (internal quotations marks omitted).  Accordingly, the action for recovery of the property "may be brought and possession recovered in the usual manner by judgment, or the action may be brought and possession recovered by the provisional remedy before judgment.  The provisional remedy cannot be employed independently, but only in the action."  Id. (emphasis added).  Thus, an action for claim and delivery is a provisional prejudgment remedy by which a party

1   may recover possession of specific property—not an independent cause of action.  Id.

2   Because amendment would be futile, the Court GRANTS Chen's motion to dismiss

3   Teed's "claim and delivery" claim without leave to amend.  See Leadsinger, Inc., 512 F.3d

4   at 532.

5   ### D.   Commodity Exchange Act Claim (Claim 9)

6   Teed alleges that Chen's mishandling of his Bitcoin violated Section 6(c)(1) of the

7   Commodity Exchange Act, 7 U.S.C. § 9(1), and Regulation 180.1, 17 C.F.R. § 180.1(a),

8   which prohibit, inter alia, the use of any manipulative device in connection with any

9   "swap."  Compl. ¶¶ 143–49.  The linchpin of Teed's argument is that Bitcoin is a "swap"

10  within the ambit of those provisions.  Id. ¶ 145.

11  Chen urges the Court to dismiss this claim without leave to amend because there is

12  no authority in support of Teed's contention that Bitcoin is a "swap" under the Commodity

13  Exchange Act.  Mot. at 23.  In response, Teed observes that the term "swap" is broadly

14  defined in 7 U.S.C. § 1a(47)(A), and contends that, "[w]hile cryptocurrencies such as

15  Bitcoin are relatively new in the marketplace, it is clearly an option encompassed in the

16  broad definition of a 'swap' provided in the Commodities Exchange Act."  Opp'n at 25.

17  A violation of Section 6(c)(1) and Regulation 180.1(a) involves three elements: (1)

18  the defendant engaged in prohibited conduct (i.e., employed a fraudulent scheme; made a

19  material misrepresentation, misleading statement, or deceptive omission; or engaged in a

20  business practice that operated as a fraud) (2) with scienter and (3) in connection with a

21  contact of sale of a commodity in interstate commerce.  CFTC v. McDonnell, 332 F. Supp.

22  3d 641, 717 (E.D.N.Y. 2018) (emphasis added).

23  Here, Teed's argument that Bitcoin is a "swap" under 7 U.S.C. § 1a(47)(A) is

24  insufficient to overcome dismissal because Teed does not allege, more fundamentally, that

25  Bitcoin is a commodity in interstate commerce.[13]  Thus, the Court GRANTS Chen's

27  ───────────────

[13] It is unclear whether the 9(b) pleading standard governs Teed's Section 6(c)(1) claim.  See
CFTC v. Kraft Foods Grp., Inc., 153 F. Supp. 3d 996, 1008–10 (N.D. Ill. 2015) (discussing
whether claims under Section 6(c)(1) and Regulation 180.1 must satisfy Rule 9(b)).  However,
even under the more lenient pleading standard of Rule 8(a), Teed's allegations here are

United States District Court
Northern District of California

1    motion to dismiss Teed's claim under the Commodity Exchange Act, with leave to amend

2    for Teed to allege non-conclusory facts to plead the elements of a Section 6(c)(1) claim.

3        **E.      Securities Act Claim (Claim 10)**

4        Teed alleges that Chen violated Sections 5 and 12(a)(1) of the Securities Act

5    because he "failed to file with the SEC a registration statement for the offer and sale of

6    Bitcoin, no registration statement was in effect at the time, and no exemption to the

7    registration requirement was available."  Compl. ¶ 154.  Teed further argues that "Bitcoin

8    are securities within the meaning of [the Securities Act]."  Id. ¶ 152.

9        Chen argues that the Court should dismiss Teed's Securities Act claim because, as a

10   matter of law, Bitcoin is a commodity, not a security.  Mot. at 23–24 (citing McDonnell,

11   287 F. Supp. 3d at 224 (surveying theories of why Bitcoin is, and should be regulated as, a

12   commodity)); see also Reply at 14–15.  In response, Teed unsuccessfully attempts to

13   convert his allegation in the Complaint (Chen's failure to file a registration statement with

14   the SEC) into a new allegation of securities fraud in violation of 15 U.S.C. § 10(b) and 17

15   C.F.R. § 240.10b-5.  See Opp'n at 26–27.[14]

16       Section 12 of the Securities Act provides that "[a]ny person who . . . (1) offers or

17   sells a security in violation of [Section 5 of the Securities Act] . . . shall be liable . . . to the

18   person purchasing such security from him."  15 U.S.C. § 77l(a) ("Section 12(a)(1)").

19   Section 5, in turn, prohibits the offer or sale of unregistered securities in interstate

20   commerce.  Id. § 77e(a) ("Section 5").

21       To establish a claim for violation of federal securities law, it is necessary to show

22   that the violation involved a security, which federal securities law defines as "among other

23   things, an 'investment contract.'"  SEC v. Rubera, 350 F.3d 1084, 1089–90 (9th Cir. 2003)

United States District Court<br>Northern District of California

───────────────────

insufficient.

[14]  Teed's bait-and-switch maneuver in his opposition—restyling his tenth cause of action as a securities fraud claim—is improper because "it is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'"  See Apple Inc. v. Allan & Assoc. Ltd., 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020) (quoting Frenzel v. AliphCom, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014)).  Thus, the Court analyzes Teed's tenth cause of action as alleged in the Complaint and declines to address Teed's newly alleged securities fraud claim.

(citations omitted). "Under the <u>Howey</u> test, 'an investment contract . . . means a contract, transaction, or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party.'" <u>Warfield v. Alaniz</u>, 569 F.3d 1015, 1020 (9th Cir. 2009) (quoting <u>SEC v. W.J. Howey Co.</u>, 328 U.S. 293, 298–99 (1946)). The Ninth Circuit has distilled <u>Howey</u>'s definition of an investment contract into a three-part test requiring (1) an investment of money (2) in a common enterprise (3) with an expectation of profits produced by the efforts of others. <u>Warfield</u>, 569 F.3d at 1020.

Teed has not alleged enough facts to satisfy the <u>Howey</u> test and thereby establish that his Bitcoin transactions with Chen constituted an investment contract within the ambit of the Securities Act. As to the first element (an investment of money), the Complaint alleges that Teed invested varying amounts of money and Bitcoin with Chen on multiple occasions. Compl. ¶¶ 37, 42, 53. As to the third element (an expectation of profits produced by the efforts of others), Teed alleges that he expected to profit from Chen's apparent expertise in cryptocurrency management and trading. <u>Id.</u> ¶¶ 37, 42. But Teed has not alleged any facts to establish the second element of the <u>Howey</u> test: a "common enterprise" between the parties.

In the Ninth Circuit, a "common enterprise" exists where the investment scheme involves either "horizontal commonality" or "strict vertical commonality." <u>Hocking v. Dubois</u>, 885 F.2d 1449, 1459 (9th Cir. 1989) (en banc). "Horizontal commonality describes the relationship shared by two or more investors who pool their investments together and split the net profits and losses in accordance with their pro rata investments." <u>Hocking v. Dubois</u>, 839 F.2d 560, 566 (9th Cir. 1988), <u>aff'd in relevant part</u>, 885 F.2d 1449, 1459 (9th Cir. 1989) (en banc). By contrast, "vertical commonality may be established by showing that the fortunes of the investors are linked with those of the promoters." <u>SEC v. R.G. Reynolds Enters., Inc.</u>, 952 F.2d 1125, 1130 (9th Cir. 1991) (internal quotations marks and citation omitted).

Teed has not alleged sufficient facts for horizontal or vertical commonality. At no

point in the Complaint does Teed allege facts showing that he and Chen "pool[ed] their investments together and split the net profits" (i.e., no horizontal commonality); on the contrary, Teed alleged that, under the Investment Agreement, Chen promised to keep Teed's Bitcoin in a "separate wallet." Compl. ¶¶ 52, 133; see Hocking, 839 F.2d at 566. Moreover, Teed has not alleged sufficient facts to show that his and Chen's fortunes were linked (i.e., no vertical commonality): the Complaint does not contain any facts concerning Chen's compensation for managing Teed's Bitcoin, and the Investment Agreement expressly provides that "[Chen Trading Management, LLC,] shall not be entitled to any compensation or fees in connection with the services provided . . . hereunder other than the release [of claims] by [Teed]." Compl. Ex. D at 4; see R.G. Reynolds Enters., Inc., 952 F.2d at 1130. Thus, the Complaint and the Investment Agreement do not allege sufficient facts to plead that the Bitcoin transactions between Teed and Chen were an "investment contract" under the Security Act.

Accordingly, the Court GRANTS Chen's motion to dismiss Teed's Securities Act claim, with leave to amend so that Teed may allege facts concerning the "common enterprise" between the parties in their Bitcoin dealings.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Chen's motion to dismiss Teed's fraud claims (claims 3 and 4) and claims under the Commodity Exchange Act (claim 9) and Securities Act (claim 10), with leave to amend; GRANTS Chen's motion to dismiss Teed's claim and delivery claim (claim 6), without leave to amend; and DENIES Chen's motion to dismiss Teed's claims for breach of contract (claims 1 and 2) and conversion (claim 5). Teed may file an amended complaint within 21 days of this order.

**IT IS SO ORDERED.**

Dated: November 9, 2022

CHARLES R. BREYER
United States District Judge

21