IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD BURDEN TEED,<br><br>  Plaintiff,<br><br>  v.<br><br>JAMES "JIMMY" CHEN, et al.,<br><br>  Defendants. | Case No. 22-cv-02862-CRB<br><br>**ORDER GRANTING MOTION TO DISMISS** |

Plaintiff Richard Burden Teed ("Teed") brings breach of contract, fraud, negligent misrepresentation, conversion, replevin, breach of fiduciary duty, violation of 17 C.F.R. § 1.20(a), fraudulent solicitation, and negligence claims against Defendants James "Jimmy" Chen and Chen Trading Management, LLC (together, "Chen"), for allegedly mismanaging Teed's Bitcoin. FAC (dkt. 34). Teed alleges that Chen fraudulently induced Teed's Bitcoin investment and failed to uphold promises to repay that investment. Id.

Chen moves to dismiss Teed's claims for fraud, negligent misrepresentation, replevin, and Securities Act violation for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Mot. (dkt. 38). Teed opposed the motion. Opp'n (dkt. 42). Chen replied. Reply (dkt. 43). Because Teed fails to state each of the challenged claims, the Court GRANTS Chen's motion to dismiss.

**I. BACKGROUND**

Teed alleges the following:

In or around September 2019, Chen convinced Teed to invest money and Bitcoin

with Chen's opportunity fund, the Silverstream Opportunity Fund, LLC. FAC ¶ 29. Teed received a Silverstream Opportunity Fund booklet that represented that "Silverstream is a fully-liquid fund. Limited Partners are able to withdraw capital anytime. There are no hard lockups." Id. ¶¶ 37–38.

Chen purported to be skilled in cryptocurrency management and trading, representing that he was earning 400% returns on his Bitcoin investments by using a "magic box" algorithm that could time cryptocurrency transactions to maximize returns on investment. Id. ¶¶ 33–34. Chen also sent Teed screenshots showing investment returns of 28% for April 2019 and 41% for the preceding seven months. Id. ¶ 35. Moreover, Chen emphasized his impending partnership with Bill Barhydt, the CEO of Abra, a well-known expert of Internet and Mobile Technologies. Id. ¶ 36.

Trusting in Chen's apparent expertise, Teed liquidated 90 Bitcoins and transferred the funds to Chen for investing and trading on Teed's behalf. Id. ¶ 43. Teed then entrusted an additional $250,000 (worth about 45 Bitcoins) to Chen for the same purpose. Id. ¶ 49.

After receiving Teed's funds, however, Chen did not purchase any Bitcoins for weeks. Id. ¶ 50. During this time, the purchase price of Bitcoin rose from around $4,000 per Bitcoin to over $7,500 per Bitcoin. Id. ¶ 51. Eventually, Chen purchased an unspecified amount of Bitcoin with Teed's money at the price of $7,500 per Bitcoin. Id. ¶ 52.

Dissatisfied with the timing and price of Chen's Bitcoin purchase, Teed demanded the return of his money. Id. ¶ 53. But Chen did not repay Teed. Id. Instead, Chen offered to place Teed's funds into arbitrage to "maintain safe trades and get back the lost Bitcoin." Id. ¶ 54.

### A.   March 2021 Investment Management Agreement

On March 3, 2021, Teed and Chen entered into an Investment Management Agreement ("Investment Agreement"). Id. ¶ 58; id. Ex. D (dkt. 34-4). The Investment Agreement authorized Chen to establish a "separate wallet" account (the "Account") for

1    the custody and management of Teed's Bitcoin.  Id. ¶ 59; id. Ex. D. at 1.

2         Teed authorized the deposit of 94 Bitcoins into the Account.  Id. ¶ 60.  The
3    Investment Agreement authorized Teed to "withdraw all or any portion of the assets in the
4    Account upon one (1) business day prior written notice to [Chen Trading Management,
5    LLC], and the amount so withdrawn shall be immediately distributed to [Teed] by [Chen
6    Trading Management, LLC] to the wallet set forth in such written notice."  Id. ¶ 61; id. Ex.
7    D. at 1.  All of Teed's Bitcoin would remain in the Account and would not be "distributed,
8    exchanged, sold or otherwise transferred or assigned, in whole or in part, to any other
9    wallet or account, except in connection with a termination of [the] Agreement . . . or with
10   prior written consent of [Teed]."  Id. ¶¶ 56–57; id. Ex. D. at 5.

11        On June 15, 2021, the Investment Agreement expired.  Id. ¶ 64.  Chen had not paid
12   any Bitcoins to Teed.  Id. ¶¶ 65–70.

13        On June 18, 2021, Chen emailed Teed acknowledging that Chen was "in default"
14   and "had every intention to pay back the 106 [Bitcoin] that [wa]s in default alongside any
15   penalties that w[ould] be mutually discussed later on."  Id. ¶ 66; see id. Ex. A (dkt. 34-1) at
16   3.  On June 19, 2021, Chen emailed Teed again, saying that Chen was "willing to do
17   whatever it takes to make [Teed] whole, and [would] be working 24/7 . . . to make sure it
18   happen[ed]."  Id. ¶ 60; see id. Ex. B. (dkt. 34-2) at 3.

19        Teed asserts that Chen did not take any steps to "make [him] whole."[1]  Id. ¶ 69.
20   Instead, Chen claimed that he sent Teed's Bitcoin overseas to a Chinese citizen named
21   "Max," who was refusing to return the Bitcoin.  Id. ¶ 121.  Chen provided Teed with
22   screenshots of this alleged transfer.  Id. ¶ 122.

23        **B.    September 2021 Settlement Agreement**

24        Then, on September 7, 2021, Teed and Chen entered into a Settlement and Release
25   Agreement ("Settlement Agreement"), which established a schedule for Chen's repayment

---

[1] Teed emphasized that Chen's "displays of extravagance"—living in a lavish house in the Bay Area, driving a Rolls Royce—are incompatible with his representations of an inability to pay Teed back.  FAC ¶¶ 82–85.

3

of Teed's Bitcoin. Id. ¶ 74; id. Ex. C. (dkt. 34-3). The Settlement Agreement also set contingencies for late payments and non-payment. Id. ¶ 77; id. Ex. C. at 3.

Chen did not make any payments under the payment plan. Id. ¶ 78. As of November 2022, Chen owed Teed a total of 136.5 Bitcoins, the value of which is more than $5.1 million. Id. ¶ 155. Under the terms of the Settlement Agreement, the amount owed continually increases with every payment milestone that Chen misses.[2] Id. Ex. C. at 4.

### C. Teed's Allegations

Teed brings eleven causes of action against Chen: (1) breach of the March 2021 Investment Agreement, id. ¶¶ 87–95; (2) breach of the September 2021 Settlement Agreement, id. 96–102; (3) fraud, id. 103–33; (4) negligent misrepresentation, id. ¶¶ 134–53; (5) conversion, id. ¶¶ 154–59; (6) replevin, id. ¶¶160–70; (7) breach of fiduciary duty, id. ¶¶ 171–77; (8) violation of 17 C.F.R. § 1.20(a), id. ¶¶ 178–81; (9) fraudulent solicitation in violation of 7 U.S.C. §§ 9(1), 25(A)(1)(B), (C)(IV), and Rule 180.1, id. ¶¶ 182–89; (10) fraudulent solicitation in violation of Securities 5 and 12(a)(1) of the Securities Act, id. ¶¶ 190–99; and (11) negligence, id. ¶¶ 200–07.

The Court previously granted Chen's motion as to fraud and violations of the Commodity Exchange Act and Securities Act, with leave to amend; granted Chen's motion as to claim and delivery, without leave to amend; and denied Chen's motion as to breach of contract and conversion. Teed v. Chen, No. 22-cv-02862-CRB, 2022 WL 16839496, at *1 (N.D. Cal. Nov. 9, 2022). Teed amended his complaint, renewing all the claims he was able to under the prior order, and added new claims for negligent misrepresentation and replevin without the Court's leave. FAC ¶¶ 134–59.

Chen moves to dismiss Teed's claims for fraud, negligent misrepresentation,

---

[2] The Settlement Agreement sets the following requirement: "[I]f, for any reason, timely payment in full as outlined above . . . does not occur, the entirety of the balance 121.6 Bitcoin less any Bitcoin payment timely made shall be immediately due and owing by Chen to Teed without further notice. In addition, Chen agrees to pay to Teed one (1) additional Bitcoin each month for every month remaining that Chen owes any payment obligation." FAC Ex. C. at 4.

1  replevin, and Securities Act violation (claims 3, 4, 6, and 10, respectively). Chen does not
2  move to dismiss Teed's claims for breach of contract (claims 1 and 2), conversion (claim
3  5), breach of fiduciary duty (claim 7), violation of 17 C.F.R. § 1.20(a) (claim 8), fraudulent
4  solicitation in violation of 7 U.S.C. §§ 9(1), 25(A)(1)(B), (C)(IV), and Rule 180.1 (claim
5  9), and negligence (claim 11).  See Mot.[3]

## II.   LEGAL STANDARD

A complaint may be dismissed for failure to state a claim for which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) applies when a complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" under such a theory.  Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019). Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a 12(b)(6) motion. Id. (citing Twombly, 550 U.S. at 555).  When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986); Clegg v. Cult Awareness Network, 18 F.3d 752, 754–55 (9th Cir. 1994).

---

[3] Chen also argues that Teed's claims should be barred by the doctrine of judicial estoppel. See Mot. at 9–10. Judicial estoppel does not apply here, because an "amended complaint supersedes the original complaint, and the original complaint is treated as non-existent." Burchfield v. Corel Corp., No. 13-CV-02025-LHK, 2013 WL 12120088, at *1 (N.D. Cal. Sept. 12, 2013) (citations and quotation marks omitted). "Any motion to dismiss attacking an original complaint when an amended complaint has been filed is moot." Id. Because Teed's FAC supersedes his original complaint, Chen's argument for judicial estoppel based on the inconsistencies between the two pleadings is inapplicable.

1   If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). But leave to amend "is not to be granted automatically." In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 738 (9th Cir. 2013). A court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). To determine whether amendment would be futile, courts examine whether the complaint can be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296–97 (9th Cir. 1990).

### III.   DISCUSSION

The Court discusses the claims in the following order: fraud (claim 3), negligent misrepresentation (claim 4), replevin (claim 6), and fraudulent solicitation in violation of Sections 5 and 12(a)(1) of the Securities Act (claim 10).

#### A.   Fraud (Claim 3)

Teed alleges that Chen is liable for fraud for using false representations to induce Teed into investing money and Bitcoin with Chen and to induce him into signing the Investment and Settlement Agreements. FAC ¶¶ 103–33. Chen argues that Teed fails to allege claims with sufficient particularity under Rule 9(b). Mot. at 5, 7–10.[4]

---

[4] Chen makes three additional arguments, all without merit: (1) Teed inappropriately uses screenshots; (2) Teed's claims are contradicted by the exhibits; and (3) given that Teed is a "sophisticated business person," he cannot plausibly plead justifiable reliance on Chen's false representations. Reply at 7–9. First, Teed does not inappropriately use screenshots, because the screenshots form the basis of his complaint and are subject to incorporation by reference. Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018). Second, Chen's argument that the exhibits contradict Teed's claim is irrelevant. Chen argues that Teed's allegation that Chen "did nothing for weeks" after receiving $250,000 from Teed is contradicted by Exhibit D (the Investment Agreement), which gives Chen wide discretion in managing Teed's money. Reply at 9–10. However, this is not relevant to Teed's claim for fraud, which alleges that Chen made false representations to induce Teed into investing money and Bitcoin with Chen and to induce him into signing the Investment and Settlement Agreements. And third, Teed justifiably alleges that he

6

1    In the Court's prior order on Chen's first motion to dismiss, the Court held that
2 Teed's allegations did not meet the particularity requirements of Rule 9(b), because "Teed
3 omitted the context(s) in which Chen made the allegedly false or misleading statements,
4 and the reasons that those statements were false." Teed, 2022 WL 16839496, at *8. A
5 plaintiff must allege facts concerning the time and place of the alleged fraudulent activity.
6 Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007); Vess v. Ciba-Geigy Corp. USA,
7 317 F.3d 1097, 1106 (9th Cir. 2003). Moreover, to allege fraud with sufficient
8 particularity under Rule 9(b), "[t]he plaintiff must set forth what is false or misleading
9 about a statement, and why it is false." In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548
10 (9th Cir. 1994) (en banc).

11   Teed did not materially alter his fraud allegation in the amended complaint to
12 "allege facts concerning the circumstances of the alleged fraud, and why Chen's
13 statements were false when made," as instructed by the Court in its prior order. Teed,
14 2022 WL 16839496, at *8–9; compare Compl. (dkt. 1) ¶ 98 (alleging that Chen made false
15 representations "in and throughout September of 2019"), with FAC ¶ 104 (alleging that
16 Chen made false representations "in and throughout August and September 2019"), and
17 Compl. ¶ 103 (alleging that "Defendants, knowing their above-described representations to
18 be false, made them with the intent to deceive and defraud Teed to act in reliance"), with
19 FAC ¶ 105 (alleging that "[u]pon information and belief, these representations were
20 intentionally false and designed to induce Teed to invest with Defendants"). Teed failed to
21 specify when these false representations were made[5] and failed to provide the context
22 explaining why Chen's statements were false at the time they were made.[6]

---

relied on Chen's false representations, based on Chen's claimed skills, connections, and success. FAC ¶ 105.

[5] The Court's prior order confirms that Chen making statements "'[i]n and throughout September 2019' are insufficiently particular to satisfy Rule 9(b)." Teed, 2022 WL 16839496, at *8; see also Glen Holly Ent., Inc. v. Tektronix, Inc., 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999) (stating that "allegations such as '[d]uring the course of discussions in 1986 and 1987' and 'in or about May through December 1987' do not make the grade under Rule 9(b)").

[6] Teed alleges that "upon information and belief," Defendants' representations were "intentionally false and designed to induce Teed to invest with Defendants." FAC ¶ 105. But Shroyer v. New Cingular Wireless Servs, Inc., 622 F.3d 1035, 1042 (9th Cir. 2010). Without further specificity,

7

1    Accordingly, Teed has not sufficiently alleged the "who, what, when, where, and
2 how" of his fraud claim. See Vess, 317 F.3d at 1106. The Court GRANTS Chen's motion
3 to dismiss Teed's claim for fraud without leave to amend.[7]

### B. Negligent Misrepresentation (Claim 4)

Chen moves to dismiss Teed's claim for negligent misrepresentation, because the Court did not give Teed leave to amend his complaint to add a new cause of action. Mot. at 10–11. Teed argues that the Court, by allowing Teed to amend his complaint, did not explicitly state that he could not bring new causes of action in the amended pleading. Opp'n at 18.

The Court's prior order granted Teed leave to amend his claim for fraudulent inducement, so that he "may allege facts concerning the circumstances of the alleged fraud" and explain "why Chen's statements were false when made." Teed, 2022 WL 16839496, at *8. The Court specifically set these limitations in granting leave to amend. Teed, however, without leave of the Court or Chen's written consent, added this claim for negligent misrepresentation. Fed. R. Civ. P. 15(a)(2). As such, the Court strikes Teed's claim for negligent misrepresentation, because the Court did not give Teed leave to add this new claim. See, e.g., Saloojas, Inc. v. Cigna Healthcare of California, Inc., No. 22-cv-03270-CRB, 2023 WL 1768117, at *3 (N.D. Cal. Feb. 3, 2023) (striking a new claim because the court did not give plaintiff leave to amend to add new claims).

Even if the Court had allowed Teed to add this new claim for negligent misrepresentation, the claim would still fail to meet Rule 9(b)'s particularity requirements. "[N]egligent misrepresentation is a species of fraud." Gilmore v. Wells Fargo Bank N.A., 75 F. Supp. 3d 1255, 1269 (N.D. Cal. 2014). While there is no binding authority in the Ninth Circuit as to whether the particularity requirements of Rule 9(b) apply to negligent

---

these allegations are "conclusory statements" that do not satisfy the requirements of Rule 12(b)(6). See Iqbal, 556 U.S. at 678.

[7] The Court's prior order granted leave to amend so that Teed may allege facts concerning the circumstances of the alleged fraud and why Chen's statements were false when made. Because Teed has failed to cure these deficiencies in his amended complaint, further amendment would be futile.

8

1  misrepresentation claims, the Court has recently applied the particularity requirements of
2  Rule 9(b) to negligent misrepresentation claims.  See Chevron Prods. Co. v. Advanced
3  Corrosion Techs. & Training, LLC, No. 20-CV-90905-CRB, 2021 WL 2156467, at *3–4
4  (N.D. Cal. May 27, 2021).  Because Teed's negligent misrepresentation claim, like Teed's
5  fraud claim, fails to specify when Chen made these false representations and why Chen's
6  representations were false when made, it fails to satisfy Rule 9(b).

7  Therefore, the Court strikes Teed's claim for negligent misrepresentation.

### C. Replevin (Claim 6)

9  Teed alleges that Chen wrongfully detained his 136.5 Bitcoins by failing and
10 refusing to return them upon demand.  FAC ¶¶ 165–66.  Teed demands the Bitcoin to be
11 immediately returned under this claim for replevin.  Id. ¶ 169.  Chen argues that his claim,
12 like Teed's claim for negligent misrepresentation, also violated Federal Rule of Civil
13 Procedure 15, because Teed added this claim without leave of Court.  Mot. at 12.

14 The Court's prior order granted Chen's motion to dismiss Teed's claim for claim
15 and delivery without leave to amend, because amendment would be futile.  Teed, 2022 WL
16 16839496, at *10.  Despite this, Teed amended his complaint to add a similar claim for
17 replevin, demanding that Chen immediately return his Bitcoin.  FAC ¶¶ 160–70.  At the
18 outset, as discussed above, this new claim exceeds the scope of leave to amend granted by
19 the Court in its prior order.  Teed, 2022 WL 16839496, at *8–10, 12.  Because the Court
20 did not give Teed leave to amend this claim, like Teed's claim for negligent
21 misrepresentation, this claim should also be stricken.

22 However, even if this claim did not exceed the scope of leave to amend previously
23 granted, Teed nonetheless fails to state a claim for replevin.  Under California law, a
24 plaintiff filing a claim for replevin seeks to recover wrongfully seized property.  Benedict
25 v. Hewlett-Packard Co., No. 13-CV-00119-LHK, 2014 WL 234218, at *9 (N.D. Cal. Jan.
26 21, 2014).  The plaintiff "never ceases to claim the property as his own, but seeks to obtain
27 it rather than its value."  Harris v. Dixon Cadillac Co., 132 Cal. App. 3d 485, 490 (1982)
28 (citations omitted).  The plaintiff must show that defendant had possession of the property

at the beginning of the action, or that defendant had the power to make delivery of the property. Cal. Packing Corp. v. Stone, 64 Cal. App. 488, 492 (1923). However, Teed alleges that Chen sent Teed's Bitcoin to "Max," a Chinese citizen residing in China. FAC ¶ 71. Max allegedly refuses to return the Bitcoin, which means that Chen did not have possession of Teed's property at the beginning of this action and Chen does not have the power to make delivery. Id. Teed argues that "[t]o the best knowledge, information, and belief," Chen is detaining his property for his own personal gain. Id. ¶ 165. But based on his allegations regarding Max, this assertion is speculative and does not meet the elements of replevin.

As a result, the Court strikes Teed's claim for replevin.[8]

### D. Fraudulent Solicitation in Violation of Sections 5 and 12(a)(1) of the Securities Act (Claim 10)

Teed alleges that Chen violated Sections 5 and 12(a)(1) of the Securities Act by "fail[ing] to file with the SEC a registration statement for the offer and sale of Bitcoin pursuant to the investment contract, no registration statement was in effect at the time, and no exemption to the registration requirement was available." FAC ¶ 198. Teed further alleges that his invested monies and Bitcoin qualify as securities within the meaning of the Securities Act. FAC ¶¶ 192–95.

Chen argues that the Court should dismiss Teed's Securities Act claim because Teed fails to plead a "common enterprise" under the Howey test.[9] Mot. at 13. In response, Teed points out that by failing to maintain his assets in a separate wallet and by pooling the monies together, Chen's actions reflect horizontal commonality. Opp'n at 17.

---

[8] Although Teed requests that the Court grant leave to amend nunc pro tunc to November 30, 2022 for his claims for negligent misrepresentation and replevin, this request is misplaced. Reply at 19. Nunc pro tunc "may be used only where necessary to correct a clear mistake and prevent injustice." United States v. Sumner, 226 F.3d 1005, 1009–10 (9th Cir. 2000). It is limited to "making the record reflect what the . . . court actually intended to do at an earlier date, but which it did not sufficiently express or did not accomplish due to some error or inadvertence." Id. Because the Court is not correcting an earlier ruling, nunc pro tunc does not apply, and Teed's request is denied.

[9] In addition, Chen argues that Teed fails to articulate that Bitcoin is a security. Mot. at 12. Because Teed has failed to plead a common enterprise, the Court need not address this argument.

10

The Court previously granted Chen's motion to dismiss with leave to amend, because Teed failed to allege any facts to establish a "common enterprise" between the parties. Teed, 2022 WL 16839496, at *11. Teed did not allege facts showing horizontal commonality (such as "'pool[ing] their investments together and split[ting] the net profits'") or vertical commonality (such as facts showing that "his and Chen's fortunes were linked"). Teed, 2022 WL 16839496, at *12 (quoting Hocking v. Dubois, 839 F.2d 560, 566 (9th Cir. 1988)).

Teed again has not alleged sufficient facts for horizontal or vertical commonality in the FAC. Teed has alleged that, under the Investment Agreement, Chen promised to keep Teed's Bitcoin in a "separate wallet." FAC ¶¶ 59; 140. Although Teed alleges that Chen did not maintain Teed's assets in a separate wallet and instead pooled the monies together, Teed does not allege facts showing that Teed and Chen "split the net profits." Id. ¶¶ 45, 140; Opp'n at 17. Additionally, Teed has not alleged sufficient facts to show that his and Chen's fortunes were linked (i.e., no vertical commonality): the amended complaint does not contain any facts concerning Chen's compensation for managing Teed's Bitcoin, and the Investment Agreement expressly provides that "[Chen Trading Management, LLC,] shall not be entitled to any compensation or fees in connection with the services provided . . . hereunder other than the release [of claims] by [Teed]." FAC Ex. D. at 4; see S.E.C. v. R.G. Reynolds Enters. Inc., 952 F.2d 1125, 1130 (9th Cir. 1991). Thus, the amended complaint and the Investment Agreement do not allege sufficient facts to plead that the Bitcoin transactions between Teed and Chen were an "investment contract" under the Securities Act.

Accordingly, the Court GRANTS Chen's motion to dismiss Teed's Securities Act claim, without leave to amend.[10]

---

[10] The previous order granted Teed leave to amend so that he may allege facts concerning the "common enterprise" between the parties in their Bitcoin dealings. Because Teed still does not plead that Teed and Chen were engaged in a "common enterprise," allowing Teed to further amend his complaint would be futile.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Chen's motion to dismiss Teed's claims for fraud, negligent misrepresentation, replevin, and under the Securities Act.

**IT IS SO ORDERED.**

Dated: February 28, 2023



CHARLES R. BREYER
United States District Judge